COMMONWEALTH *vs.* CHARLES H. NUTTING.

Suffolk. November 22, 1899. — January 4, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Foreign Insurance — Constitutional Law — Statute.*

The Legislature has power to prohibit agents of foreign insurers and brokers from soliciting or acting in regard to foreign insurance, in this Commonwealth, even though they shall agree with the assured that they are his agents.

INDICTMENT, under St. 1894, c. 522, §§ 87, 98, for negotiating and transacting unlawful insurance with a foreign insurance company not admitted to do business in this Commonwealth.

The case was submitted to the Superior Court upon an agreed statement of facts. *Blodgett*, J., having refused to make certain rulings, instructed the jury that, upon the evidence set out in the agreed statement, they would be warranted in finding the defendant guilty ; and the defendant excepted.

The jury returned a verdict of guilty ; and the defendant alleged exceptions. The facts appear in the opinion.

*E. Cowen & E. P. Carver*, (*E. E. Blodgett* with them,) for the defendant.

*M. J. Sughrue*, First Assistant District Attorney, for the Commonwealth.

HOLMES, C. J. The defendant is indicted for acting in the negotiation and transaction of unlawful insurance by negotiating

in Boston with foreign insurers not admitted to do insurance business in this Commonwealth, and procuring a policy of insurance upon a vessel in Boston, to be issued by them. The agreed facts sustain the indictment subject to certain questions which are brought before us by exceptions to a ruling that the facts warranted the jury in finding the defendant guilty, and to the refusal of several requests which need not be mentioned in detail.

The foundation of the defendant's argument is the decision in *Allgeyer* v. *Louisiana*, 165 U. S. 578. That was a proceeding by the State to recover a penalty for violating a State law intended to prevent dealing with any marine insurance company that had not complied with the law. The defendants were the parties insured. The policy, an open one, was issued outside the State, and the only act done within the State was the mailing of a letter describing certain cotton to which the defendants desired the policy to attach. But the court intimate somewhat broadly that a State legislature cannot make it unlawful for a man to make a contract of insurance outside the State, although he resides and is present in the State at the time when the contract is made. It now is contended that, if this is so, it cannot be unlawful for another man to obey a request to get such insurance, if made by the one who wants it, and that the contract in the present case was made outside the Commonwealth, on principles which cannot be affected by St. 1894, c. 522, § 3. It might be argued further that at the least this was not unlawful insurance, and so that this particular indictment fails, whether the defendant had done a punishable act or not.

We bow to the decision, and even to the intimations of the case cited, without criticism. But that case expressly leaves intact the settled power of the State to impose such conditions as it pleases upon the doing of any business by foreign insurance companies within its borders. Although the reasoning of many of the cases turns on the fact that such companies are corporations, we apprehend that the power is not dependent upon that fact, but is an unsurrendered portion of the State's general right to legislate. See 165 U. S. 591; *Leavenworth* v. *Booth*, 15 Kans. 627, 634. One main object in imposing such conditions in this Commonwealth is to secure people against fraudu-

lent or worthless contracts, and, in case of litigation, to save them from having to go abroad. See *Lamb* v. *Lamb*, 6 Biss. 420, 422. We assume, until it is decided otherwise, that the power to enforce these objects will be regarded as too important and substantial to be defeated by a device, even though the device apart from its purpose would only embody a common law right. We are of opinion, therefore, that notwithstanding the right of McKie, if so minded, to apply from Boston to the London Lloyds for insurance, the Legislature has power to prohibit the agents of the Lloyds as well as the Lloyds themselves from soliciting business in Boston, and to make that prohibition effectual by providing that it shall not be escaped by an agreement making the solicitors the agents of the insured in the transaction. In other words, while the Legislature cannot impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit not only agents of the insurers, but also brokers, from soliciting or intermeddling in such insurance, and for the same reasons. What we have said goes very little if any further than what is laid down in similar terms in *Hooper* v. *California*, 155 U. S. 648, 657, 658, and the authority of that case is saved in terms in *Allgeyer* v. *Louisiana*, and is recognized again in *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557, 566. See further *Pierce* v. *People*, 106 Ill. 11.

What the Legislature can do it has done by St. 1894, c. 522. By § 3, "it shall be unlawful . . . for any person as insurance agent or insurance broker to make, negotiate, solicit, or in any manner aid in the transaction of" insurance upon any property or interests in this Commonwealth or with any resident thereof, except as authorized by the act. By § 98, "any person . . . who shall act in any manner in the negotiation or transaction of unlawful insurance with a foreign insurance company not admitted to do business in this Commonwealth or who as principal or agent shall violate any provision of this act in regard to the negotiation or effecting of contracts of insurance" is subjected to a penalty.

Whether the description of the insurance in the indictment as unlawful be rejected as surplusage, or whether the insurance be

held to be unlawful within the meaning of the act and indictment because transacted through a broker acting unlawfully, an offence under the statute is set forth and the defendant properly was convicted. It is unnecessary to consider whether the same result could be reached in another way. Possibly, for the reasons given above, it would be within the power of the Legislature to enact that the insurance broker should be regarded as the agent of the insurers, whatever the agreement of the parties, and in that way reach the result that any contract made through him when he and the insured were here would be made in this State and thus would be subject to our laws. Possibly it might be argued that such was the effect of our statute, although, if so, it fails to state it as clearly as could be wished. See §§ 3, end, 87, 90.                                   *Exceptions overruled.*